IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEAN AUSTIN SOUTH,<br><br>Defendant. | CR 12-21-H-DLC<br><br>FINDINGS &<br>RECOMMENDATION |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHERYL GILLESPIE,<br><br>Defendant. | CR 12-22-H-DLC<br><br>FINDINGS &<br>RECOMMENDATION |

On May 2, 2013, Chief Judge Dana L. Christensen sentenced Defendants Dean Austin South and Sheryl Gillespie each to five years of probation following their guilty pleas to one count of conspiracy to commit fraud in violation of 18

-1-

U.S.C. § 371. Judge Christensen also imposed restitution as part of Defendants' sentence, but deferred a final determination as to the amount.

Judge Christensen subsequently referred this matter to the undersigned for the limited purpose of holding a hearing and determining an appropriate amount of restitution. The Court held a restitution hearing on June 5, 2013. Because the government did not meet its burden of proving the victim's loss amount by a preponderance of the evidence, no restitution should be imposed against either Defendant.

## I. Factual and Procedural Background

The Court makes the following factual findings based on the evidence and testimony presented at the May 2, 2013, sentencing and June 5, 2013, restitution hearing. Dean South was one of the principal owners of Superior Propane, a Montana-based wholesale propane company, and his daughter Sheryl Gillespe was one of the company's bookkeepers. Superior Propane became a customer of Banner Bank in 2007, and thereafter relied on a multi-million dollar line of credit from the bank to meet its various operating expenses and financial obligations. Beginning in early 2008, Defendants carried out a scheme to falsify Superior Propane's accounting records to ensure their continued access to operational funds from the line of credit extended by Banner Bank. As a result, each Defendant pled

guilty to, and stands convicted of, one count of conspiracy to commit fraud.

At the sentencing hearing, the government sought restitution on behalf of Banner Bank in the total amount of $4,298,030.19. This amount consisted of the $2,783,459.19 balance Banner Bank claimed was still due on the line of credit at the time of sentencing, lost interest in the amount of $779,174.01, and $735,396.29 in legal fees allegedly incurred by Banner Bank during its collection efforts. Dkt. 29, at 52-53; 57-58.

Banner Bank's Senior Vice President, Bruce Nelson, testified to these amounts at the sentencing hearing but failed to provide any supporting documentation. For example, Nelson testified that in November 2009, the outstanding balance due on the line of credit was $5,583,488.37. Dkt. 29, at 49. Nelson explained that Banner Bank thereafter received proceeds from several sources – including accounts receivable, the sale of collateral, and related civil litigation – and applied those proceeds to reduce the principal on the line of credit to $2,783,459.19 as of April 2013. Dkt. 29, at 46-50. Nelson had prepared a handwritten list of those 23 credits to principal,[1] but did not have a schedule documenting those credits or any other verifying that the outstanding balance to which he testified was accurate. Dkt. 29, at 49-50.

---

[1] Dkt. 30-1.

Nelson also testified that Banner Bank had incurred $735,396.29 in legal fees during its collection efforts, which dated back to November 2009. Dkt. 29, at 54. But Nelson did not provide copies of any legal bills or produce any other evidence to establish the amount of attorney fees allegedly incurred by the bank. Dkt. 29, at 52-54. Nelson simply explained he had been given the $735,396.29 total by one of Banner Bank's "administrative staff people." Dkt. 29, at 52-54. Nor did Nelson provide any documentary evidence relating to the $779,174.01 in interest Banner Bank claimed had accrued on the principal. Dkt. 29, at 55-56.

Absent any supporting documentation, Judge Christensen explained he could not determine whether the loss amounts claimed by Banner Bank were in fact accurate, and whether they had been incurred as a direct and foreseeable result of the Defendants' wrongful conduct. Dkt. 29, at 58-59. Because Judge Christensen did not have adequate information to make a ruling, he reserved judgment on the issue of restitution. Dkt. 29, at 58. Judge Christensen explained that as the victim seeking restitution, Banner Bank would have to provide documentation as to the principal balance owing on the line of credit, the legal fees incurred, and the interest amount claimed. Dkt. 29, at 59.

At the subsequent restitution hearing convened by the undersigned pursuant to Judge Christensen's referral, the government abandoned any claim to restitution

on behalf of Banner Bank for attorneys fees and interest. The government agreed it had no documentation to support those claims, and so limited its request for restitution to the $2,783,459.19 balance that Nelson testified remains due on the line of credit.

## II. Discussion

### A. Application of Mandatory Victims Restitution Act

A threshold question arose at the restitution hearing as to which restitution statute applies in this case – the Mandatory Victims Restitution Act of 1996, 18 U.S.C. §§ 3663A-3664 ("MVRA") or the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663 ("VWPA"). This is a potentially significant issue because "[o]rdering restitution under the VWPA is discretionary and requires the district court to consider the defendant's financial resources and ability to pay," while the MVRA mandates restitution for certain offenses regardless of the defendant's economic situation. *United States v. Grice*, 319 F.3d 1174, 1177 (9th Cir. 2003); 18 U.S.C. § 3663(a)(1)(A)-(B); 18 U.S.C. § 3663A(a)(1).

There is no dispute that the MVRA generally controls where, as here, a defendant is convicted of conspiracy to commit fraud in violation of 18 U.S.C. § 371. Defendants nonetheless argue the plea agreements makes clear in the following paragraph that the parties intended for the VWPA to apply:

> **10. Agreement as to Restitution:** The defendant acknowledges and agrees to be responsible for complete restitution regardless of whether a count or counts of the indictment have been dismissed as part of this plea agreement. 18 U.S.C. § 3663(a)(3).

Dkt. 4, at 9.

Because the plea agreements reference § 3663(a)(3) of the VWPA, Defendants take the position that "the parties therefore intended that all the neighboring provisions of the VWPA would apply to [this] case as well; including those that require the court to consider [Defendants'] financial resources and ability to pay in framing the restitution order." Dkt. 34, at 4. Defendants argue the government has thus waived its right to have this case proceed under the MVRA.

But the Ninth Circuit has held that the right to restitution belongs to the victim, not the government, which means that "restitution under the MVRA is not a right to be sought or waived by a prosecutor." *United States v. Moreland*, 622 F.3d 1147, 1173 (9th Cir. 2010). "Rather, as the name of the statute suggests, restitution is *mandatory* where the MVRA applies." *Moreland*, 622 F.3d at 1173 (emphasis in original). Paragraph two of the plea agreements is consistent on this point, stating that "[r]estitution is mandatory" in light of the offense to which South was pleading guilty. Dkt. 4, at 2. That the plea agreements subsequently cites to § 3663(a)(3) of the VWPA does not mean restitution is discretionary, or

that the VWPA somehow controls. As *Moreland* instructs, the government cannot waive Banner Bank's right to restitution under the MVRA. The MVRA thus provides the applicable statutory framework for analyzing the restitution issue in this case.

B. **General Principles Governing Restitution**

"The 'primary and overarching goal' of the MVRA 'is to make victims of crime *whole*, to *fully* compensate these victims for their losses and to restore these victims to their original state of well-being.'" *Moreland*, 622 F.3d at 1170 (*quoting United States v. Gordon*, 393 F.3d 1044, 1053 (9th Cir. 2004)). The MVRA thus requires that the district court "order restitution to each victim in the full amount of each victim's losses as determined by the court." 18 U.S.C. § 3664(f)(1)(A).

The statute defines the term "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern." 18 U.S.C. § 3663A(a)(2). Consistent with this definition, restitution under the MVRA "may only compensate a victim for actual losses caused by the defendant's

conduct." *United States v. Gamma Tech Industries, Inc.*, 265 F.3d 917, 926 (9th Cir. 2001). "Actual loss" for purposes of restitution "is determined by comparing what actually happened with what would have happened if the defendant had acted lawfully." *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010).

"Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence." 18 U.S.C. § 3664(e). Under this standard, "[t]he government bears the burden of proving that a person or entity is a victim for purposes of restitution, and of proving the amount of the loss." *United States v. Waknine*, 543 F.3d 546, 556 (9ht Cir. 2008). Likewise, the government bears the burden "of establishing by a preponderance of the evidence that the victim's damages were caused by the conduct of which the defendant was convicted." *United States v. Peterson*, 538 F.3d 1064, 1074-75 (9th Cir. 2008).

The Ninth Circuit has interpreted the preponderance of the evidence standard "as requiring that the evidence supporting a district court's restitution meet a threshold level of adequacy." *United States v. Tsosie*, 639 F.3d 1213, (9th Cir. 2011). Evidence of a victim's losses must posses "'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (*quoting United States v. Garcia-Sanchez,*, 189 F.3d 1143, 1148-49 (9th Cir. 1999)).

## C. Amount of Restitution

The government conceded at the beginning of the restitution hearing that it had no additional evidence to support any claim to restitution on behalf of Banner Bank for attorneys fees and interest. The government thus abandoned its claim to restitution for those items, but argues that Defendants should be required to pay restitution in the amount of $2,782,459.19, which is the principal balance that Nelson testified remained due on the line of credit. Prior to the restitution hearing, Banner Bank provided the government with a copy of "the history sheets from 10/09 to present" for Superior Propane's line of credit account. Dkt. 30-1. For whatever reason, however, Nelson chose not to attend the restitution hearing and Banner Bank did not send anyone else in his place to testify as to the loss amount claimed. Because Nelson did not attend the hearing, the government indicated at the outset that it would rely on Nelson's prior testimony at the sentencing hearing and Banner Bank's newly submitted loan history sheets to meet its burden of proof as to the proper amount of restitution.

The government argues these loan history sheets corroborate Nelson's testimony at the sentencing hearing as to the 23 credits Banner Bank applied to principal between December 2009 and April 2013. The five-page document does show that Banner Bank credited 23 separate amounts totaling $2,800,548 and

some odd cents to principal during this time period. The document also reflects that as of April 16, 2013, the outstanding balance on the line of credit was $2,783,459.89. The government takes the position that these loan history sheets, coupled with Nelson's testimony at the sentencing hearing, provide a sufficient evidentiary basis for imposing restitution in the amount of that unpaid balance.

The Court disagrees. Even when considered in conjunction with Nelson's testimony at the sentencing hearing, the loan history sheets simply do not meet the "threshold level of adequacy" necessary to support a restitution order. *Tsosie*, 639 F.3d at 1221. For one thing, the loan history sheets contain several unexplained entries in the "Amount" column. These entries show that received Banner Bank received amounts totaling $869,110.18 between October 2009 and April 2013, but for some reason did not apply those amounts to reduce the principal balance due. Dkt. 30-1, at 2-7. Nelson did not discuss the amounts not credited to principal while testifying at the sentencing hearing, and for whatever reason did not bother to testify at the subsequent restitution hearing. The government did not present any other evidence at the restitution hearing establishing why these unexplained entries were not credited against the principal.

Rather, the government's counsel simply expressed his understanding that some of the entries may have reflected expenses incurred by Banner Bank in its

effort to collect proceeds from various sources after November 2009. From this premise, the government apparently asks the Court to infer that these unexplained entries do not represent amounts that should have been credited against the principal. Counsel's statements, however, are not evidence. And contrary to the government's argument at the restitution hearing, Nelson did not testify at the sentencing hearing that these unexplained entries reflected expenses incurred by Banner Bank. Nelson testified generally at the sentencing hearing that Banner Bank had incurred significant legal fees during its collection efforts, but he did not testify that those legal fees were somehow represented by the entries on the loan history sheets.

In fact, Nelson could not have testified as to the contents of the loan history sheets because they were not produced by Banner Bank until just before the restitution hearing. For whatever reason, however, Nelson chose not to attend the restitution hearing, and has not provided any testimony to explain or authenticate the contents of Banner Bank's loan history sheets. Because the record is thus deficient, the Court finds that the loan history sheets on which the government relies to establish Banner Bank's loss amount do not have sufficient "indicia of reliability to support [their] probable accuracy." *Waknine*, 543 F.3d at 557 (finding that "one-page loss summaries" set forth in victims' affidavits were not

sufficient to support a restitution order). *See also Tsosie*, 639 F.3d at 1222-23 (finding that a spreadsheet showing travel costs claimed by the victim was not an adequate "evidentiary basis" for restitution award because it was not accompanied by a sworn statement and "contained a number of oddities" that the district court failed to address). This means that the loan history sheets are not sufficiently reliable to establish the $2,782,459.19 loss amount claimed by Banner Bank, and are not enough to support a restitution order.

With the exception of these loan history sheets, the record stands exactly as it did at the time of sentencing. Judge Christensen made it abundantly clear during the sentencing hearing that there was not enough evidence in the record to determine whether the loss amounts claimed by Banner Bank were accurate, and whether they had been incurred as a direct and foreseeable result of the Defendants' wrongful conduct. Dkt. 29, at 58-59. The Court now finds itself in the very same position, unable to determine based on the materials of record whether the $2,782,459.19 loss amount claimed by Banner Bank is accurate. The government has thus failed to meet its burden of proving by a preponderance of the evidence the amount of loss sustained by Banner Bank as a result of the Defendants' criminal conduct. Absent sufficient proof by the government,

restitution should not be imposed.[2]

**D.     Payment Schedule**

In the event presiding Judge Christensen disagrees with the undersigned's recommendation and decides to impose restitution as part of Defendants' sentence, the MVRA requires that he "specify in the restitution order the manner in which, and schedule according to which, the restitution is to be paid[.]" 18 U.S.C. § 3664(f)(2).  The MVRA authorizes a court to order "nominal period payments if the court finds from the facts on the record" that the defendant's economic circumstances "do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." 18 U.S.C. § 3664(f)(3)(B).

Defendants invoked this nominal payment provision at the restitution hearing, without any objection by the government.  The evidence of record, as set forth in the presentence investigation reports, establishes that Defendants lack the ability to pay the full of the amount of the restitution due in the foreseeable future

---

[2] Having so concluded, the Court need not address Defendants' alternative argument that they should not be required to pay restitution because Banner Bank was in a better financial position as a result of their criminal conduct than it would have been had they not committed fraud.

under any reasonable payment schedule. If restitution is imposed, Defendants should be ordered to pay nominal periodic payments to 18 U.S.C. § 3664(f)(3)(B).

## III. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that no restitution be imposed against either of the Defendants. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel on or before July 22, 2013. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full statutory period set forth in 28 U.S.C. § 636(b)(1) within which to file objections).

DATED this 12th day of July, 2013.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge